## WESTERN SURETY CO. v. CITY OF DEVILS LAKE.

### No. 9332.

Circuit Court of Appeals, Eighth Circuit.
April 11, 1932.

Tom Kirby, of Sioux Falls, S. D. (F. T. Cuthbert, of Devils Lake, N. D., on the brief), for appellant.

Clyde Duffy, of Devils Lake, N. D. (Torger Sinness and Sinness & Duffy, all of Devils Lake, N. D., on the brief), for appellee.

Before STONE, KENYON, and GARDNER, Circuit Judges.

KENYON, Circuit Judge.

This is an appeal from a judgment of $17,220 against the Western Surety Company, appellant, surety on a bond to protect appellee under a contract made with one J. J. Larson to construct a well for the city of Devils Lake, a municipal corporation of North Dakota. The facts necessary to an understanding of the case are as follows:

March 16, 1927, pursuant to a proposal made to the city of Devils Lake, by said Larson to construct a well for said city in accordance with plans and specifications prepared by Toltz, King & Day, Inc., engineers and architects, a contract was entered into between Larson, as contractor, and said city for the construction of said well. The specifications provided for a well some 1,500 feet deep to be delivered to the city clean and clear for the installation of pumping equipment and to be completed by July 1, 1927.

Larson for the performance of the contract was to receive $17,220.

The diameter, as provided by the contract, which decreased as the depth of the well increased, was:

Top 100 ft.—16 inch O. D. casing

Next 200 ft.—13 inch O. D. casing

Next 1140 ft.—10 inch I. D. casing

Next 40 ft.— 8 inch I. D. Perforated Pipe.

At the bottom, and forming a part of the casing, there was to be a screen 69 feet and 10 inches in length which went into the strata known as Dakota sandstone.

Larson commenced work on the project in March, 1927. A test well was first dug showing an abundance of water at the place selected to dig the well. There seems to have been no serious trouble with placing the cas-

ing for about 1,460 feet, but, in connecting the screen, trouble commenced and from that time on continued. Tools were lost in the well and difficulty in extracting them ensued; obstructions were met with in drilling, and many difficulties experienced, which delayed finishing the well, and the work continued under Larson until the spring of 1928, when he quit the same. The flow of the water was not satisfactory to the engineer because there was not a clear and free flow thereof. It was impeded by sand and mud. In March, 1929, one Cairncross, an experienced well digger, was employed by the board of city commissioners of the city of Devils Lake, under an agreement with Larson, to direct the completion of the well, and authority was given Cairncross to gravel pack the well, if necessary, at an expense of $800 additional to Larson's contract, to be paid from funds which might be due Larson upon completion of his contract. Cairncross testified as to the work he had done, claiming that satisfactory results were achieved, that the job was a good one as far as the drilling and the construction of the well was concerned, that at times he was pumping nearly a thousand gallons a minute. Matters ran on, there was much correspondence between King, the engineer in charge, and Larson, much complaint was made, and finally, about June 13, 1929, the engineer under section 59 of general conditions of the contract issued a certificate as follows:

"Devils Lake City Commission, Devils Lake, North Dakota.

"Gentlemen:—We hereby certify that J. J. Larson has failed to complete his contract and that sufficient cause exists for the cancellation of the contract, as provided for in paragraph 59 of the specifications, page G—10. We recommend that the City of Devils Lake shall serve written notice to J. J. Larson, as therein provided, that this contract is terminated and that the city thereupon proceed to complete the contract by other means. Toltz, King and Day, Inc."

The following notice was sent to Larson and appellant by the city attorney of Devils Lake: "You and each of you will take notice that the City of Devils Lake, North Dakota, upon the expiration of seven days from the date hereof will terminate the employment of J. J. Larson, as contractor for the construction of a well at Devils Lake, North Dakota, under a contract dated March 6th, 1927, take possession of the premises and finish the work by whatever means the city may deem expedient."

Thereafter the city, upon recommendation of King, retained the McCarthy Well Company of Minneapolis to work on the well. They commenced September 4, 1929, and worked until October 28, 1929, when the project was abandoned.

King testified that the well did not meet the requirements of the contract because of the sand in the water and the inadequate flowage. At the close of the testimony defendant (appellant) moved for a directed verdict which was denied, and the court submitted the case to the jury under instructions hereafter discussed. The jury found for appellee for the full amount of the bond.

Three points raised by assignments of error are argued by appellant: (1) Error of the court in not instructing a verdict for appellant at the close of the evidence; (2) error in the instructions of the court as to the measure of damages; (3) error in overruling objections to certain evidence.

Our conclusion as to error in the instructions of the court makes unnecessary the consideration of the question raised as to error in not directing a verdict.

As to the objections to questions asked the witness Bennett, and as to the motion to strike parts of his evidence, we may say that in our judgment the court's rulings were correct.

We therefore limit our consideration to the court's instructions as to damages recoverable.

The complaint alleges a general breach of the contract as follows:

"V. That the said J. J. Larson has failed to perform the terms and conditions of said contract by him to be performed and has failed to deliver to the plaintiff the well provided for in said contract, and has abandoned the contract."

No effort was made to make the complaint more specific.

The parties went to trial on this rather broad allegation. The court, referring to this in its instructions, said: "In its complaint the plaintiff alleges, rather in a general way, that Larson failed entirely to complete the well according to the specifications and abandoned the same. It does not set out in particular the manner of breach of his contract but in this trial the plaintiff claims that the contract was breached in four different ways; first, that the contractor, Larson, has failed to deliver to the City a well that would deliver the quantity of water it claimed he agreed to do in the contract, some

five hundred gallons per minute; second that he breached the contract in that he failed to deliver to the City a well that would deliver the quality of water it is claimed the contract provided, namely, clear water; and, third, that he breached the contract in that he failed to construct a well in accordance with the specifications, particularly with reference to a clear, clean, unobstructed hole from the top to the bottom; and lastly, for the first time to day in the trial of the case it claims a further breach in the neglect of the contractor to install the kind of screen provided for in the contract, namely, a closed screen at the bottom."

The Court told the jury that the question of the quantity and quality of the water was not for them, and that the court had decided that Larson did not agree in the contract to furnish any particular quantity or quality of water, and that these claims of alleged breaches of the contract were out of the case. It also told the jury: "* * * Nor does the plaintiff complain of the dimensions or size or quality of the casing used in the well; nor does it complain of the depth of the well; * * *" and then said: "* * * The contract provides the well shall be delivered to the owner clean and clear for the flow of water and the installation of pumping equipment, and this part of the contract reads as follows: 'In the event the contractor fails to complete a well of the diameter and depths specified he shall be entitled to no payment whatever and shall return to the owner any moneys that shall have been paid him on account of this contract.'"

The court set out as plaintiff's theory that Larson had breached the contract by permitting the casings or couplings thereof to become broken or parted in such way that the diameter of the hole was lessened and did not conform to the contract, and further by placing in the well a screen not plugged. Defendant's theory was stated by the court to be that Larson had completed the well in exact accordance with the specifications and contract, and that King had orally waived the provision as to plugging the screen. The court then instructed the jury as follows:

"Gentlemen, that leaves the issue for you to decide simply whether or not there was some broken pipe or separated pipe or obstruction in the well somewhere between the top and the bottom by reason of a broken or disconnected pipe or whether the contractor in violation of his contract and without authority from King placed in the well a screen not authorized either by the contract itself or by Mr. King.

"Before the plaintiff is entitled to recover in this case it must prove by a fair preponderance of the evidence every material allegation that it is required to prove under its pleadings, and the issue in this case, and those material allegations are that because of Mr. Larson's neglect somewhere in that well from the top to the bottom it was obstructed by some broken or disjointed pipe, so as to obstruct and lessen the diameter of the hole as provided for in the contract. If such alleged obstruction was in the ten inch pipe then it must have obstructed and lessened the diameter of the ten inch pipe hole there at the point where the broken or disconnected pipe was located."

Also, as to measure of damages:

"If you find for the plaintiff then the measure of damages is the amount of money paid by the City to Larson himself and to Cairncross, who worked for Larson under the contract that has been introduced here. Those two items amount to something over eighteen thousand dollars ($18,000.00), but your judgment may not, if you find for the plaintiff, exceed $17,220.00. That is the amount of the bond. So if you find for the plaintiff in this case your judgment will be for $17,220.00, otherwise you will find for the defendant."

To the instruction as to measure of damages proper exceptions were preserved. It is necessary in considering the question as to whether the proper rule of damages was submitted to the jury to refer to a number of the provisions of the contract, as the rights of the parties must be drawn therefrom. It provides for the complete installation of a well, the depth and diameter thereof being set forth in the specifications. The capacity of the well is to be tested up to a flow of 500 gallons per minute, and pumping to that extent was to be continued for six hours.

We set out from the specifications section 14: "In the event the Contractor fails to complete a well of the *diameters* and *depths* specified he shall be entitled to no payment whatever and shall return to the owner any moneys that may have been paid him on account of this contract." (Italics ours.)

Section 21: "Driving of casing shall be so done as not to injure the casing. Driving shoes shall be provided if necessary to prevent distortion of casing. Casing bent, driven out of line, or otherwise injured or faulty

shall be removed and placed with good materials and work."

Section 24: "Screen. The proposal shall be based on a slotted Armco Iron screen, 8 inches in diameter inside. The length of the perforated portion shall be 40 feet and in addition solid ends shall be provided for plugging at the bottom and for packing at the top. The bottom of the screen shall be plugged to prevent the flow of sand into the well."

Of the general conditions of the contract we set out section 22: "Condemned Work. The Engineer or his representative may direct the removal from the premises of any work or materials which he may condemn as unsound, improper or not in accordance with the specifications and such work shall be replaced to his entire satisfaction."

Section 34: "Guaranty. The Contractor shall furthermore be held responsible for all materials and workmanship used in the construction of the work and further guarantees to repair or replace, at his own expense, within the period of one year, any defective work due to faulty workmanship or materials."

Under the theory of the case submitted to the jury the moneys paid to the contractor Larson could be recovered from the surety to the full amount of the bond under section 14 of the specifications, if the diameter of the well was lessened by breaks in the casing or if the screen was not plugged; that there was a breach of provision 24 of the specifications in failing to plug the screen is without question. Such failure could not be waived under the contract by any oral agreement; section 55 of general conditions providing: "Oral modifications. No oral statement of any person, whomsoever, shall in any manner or degree modify or otherwise affect the terms of these specifications or the contract for the work. Any change shall, before being made, be stipulated and agreed to in writing by the parties to the contract."

As a matter of law, did the failure of Larson to plug the screen as specified by section 24 of the contract bring into operation the forfeiture clause of section 14?

Section 14 did not provide for the recovery of all amounts paid to the contractor in the event of any breach of the contract, but provided for such recovery only "in the event the Contractor fails to complete a well of the *diameters* and *depths* specified." (Italics ours). The failure to fulfill the spec-

ifications as to depths and diameters was made by section 14 a nonremediable breach. Evidently the parties considered the depth and diameter were so important that a breach thereof rendered the well of no value to appellee. Other breaches of the contract, however, were regarded as remediable. Sections which we have herein set out show that the engineer could condemn improper work and require replacement thereof, that the contractor guaranteed to repair at his own expense defective work due to faulty workmanship or materials, that casings bent, driven out of line, or otherwise injured or faulty were to be removed and replaced with good materials. The only circumstances under which the owner is entitled to recover all the moneys paid the contractor are when he fails to complete "a well of the diameters and depths specified." It might be true that the failure to plug the screen was the proximate cause of damages in a greater amount than the face of the surety bond. Such failure might be remediable only at a cost greater than the cost of a new well, but that does not appear in this record. The instructions on measure of damages amounted to this—that, if the contractor had failed to plug the screen, then whether such failure were the proximate cause of the condition of the well or not, whether it were remediable or not, and regardless of the cost of remedying it, the appellee could recover the full amount of the surety bond by virtue of the clause contained in section 14 of the specifications. The jury may have disbelieved every witness put on the stand by appellant with respect to the alleged break in the casing, could have been satisfied that this break had nothing to do with lessening of diameters, could have believed that the rocks and shale had been thrown down the well by the contractor, and that the failure to plug the screen had nothing to do with the condition of the well, or could have been remedied at a small cost, and yet under the instructions of the court could have found for the appellee in the full amount of the bond. This will not do.

The failure to plug the well had nothing to do with the diameter or the depth thereof, and such failure did not bring the rule of recovery under section 14.

■ While it may be argued that the breaking of the casing might diminish diameter, we are not satisfied that within the meaning of the contract and the intention of the parties as there expressed, a broken casing necessarily constituted a failure to complete the

well according to the diameter specified. Section 21 of the specifications hereinbefore quoted provides specifically for the removal of casing injured or faulty, and the replacement of the same with good materials and work. The measure of damages would be the cost or expense of removing and replacing the broken casing. Of course, the casing might become so injured and broken that it would as a practical matter be impossible to repair or replace it under section 21 of the specifications, and the result might be a lessening of diameter, but, if the break were such as could reasonably be repaired, or if the broken casing could be replaced as provided by specification 21, the diameter would not be necessarily lessened. These questions would under proper evidence seem to present issues of fact.

In view of the erroneous charge of the court as to the measure of damages which requires a reversal of the case, we deem it unnecessary to discuss some of the other questions referred to in argument.

The judgment of the trial court is reversed, and the cause is remanded to said court, with instructions to grant appellant a new trial.

Reversed and remanded.